# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Johnny Lerue Davis, Jr.,

                Petitioner,        Case No. 16-cv-10107

v.                             Judith E. Levy
                                   United States District Judge

Steven Rivard,

                              Mag. Judge Elizabeth A. Stafford

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan prisoner Johnny Lerue Davis, Jr. ("Petitioner") filed this habeas corpus petition under 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, two counts of assault with intent to murder, Mich. Comp. Laws § 750.83, discharging a firearm in or at a building, Mich. Comp. Laws § 750.234b, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, following a jury trial with co-defendant Andrew Lee Ursery. Petitioner was sentenced to 30 to 50 years imprisonment for second-degree murder, 15 to 30 years

imprisonment for each of the assault with intent to murder convictions, two to four years imprisonment for discharging a firearm in or at a building and two years imprisonment for felony-firearm. The petition raises two claims: (1) the trial court improperly admitted autopsy photographs and photographs of a memorial to the victim; and (2) insufficient evidence supported the convictions.

For the reasons that follow, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability.

## I. Background

Petitioner's convictions arise from a shooting outside a club in Ecorse, Michigan on October 7, 2012. The shooting resulted in the death of one woman and injuries to two men. The Michigan Court of Appeals summarized the evidence adduced at trial leading to Petitioner's convictions as follows:

> This appeal arises from the death of Chanel Weddington and gunshot wounds Damond Williams and Billy Parker sustained outside of an after-hours club known as "The Place," in the city of Ecorse, during the early morning hours of October 7, 2012. Diamond Pitts brought defendants, Patrice Jackson ("Patrice"), and a man identified at trial only as "Davonte" to The Place, and parked on the grass in a field across the street from the club. Defendants

went to the club because they had a "beef" with people there. According to the testimony at trial, defendants had earlier stated that they had guns, and Ursery had shown a silver gun to the group. Regardless, a security guard and the club owner's husband (Patrick Wheeler) both testified that everyone is patted down when they enter and turned away if weapons are found.

Later, the security guard and Wheeler observed an altercation on the dance floor involving both women and men, including defendants. The security guard testified that defendants were escorted outside for five minutes, and then allowed to reenter. Wheeler also testified that, when the same men got into another argument, he closed the club and escorted patrons outside. At that time, the security guard heard people saying that the men involved in the fight were about to start shooting. Shaquetta King saw her cousin, Parker, throw a punch at Davonte, and she also saw Joseph Elias standing in the street with his shirt off and a gun in his hand. The security guard testified that he saw defendants walk across the street toward the field. King testified that Davonte also walked there.

As two patrons, Raphael Reed and Vick Bullard, were leaving and walking to their car parked on a street slightly south of the field, Reed saw Davis and Ursery standing near a white car in the field. Reed testified that, as he started to put his key in his car door, he dropped it, bent over to pick it up, and, at the same time, heard gunshots. Reed recalled that he took cover by a truck, but looked toward the field ten feet away. Reed testified that he saw Davis and Ursery, who he had known before, along with another man, shooting toward the front door of the club. Reed testified that he also saw Ursery fire toward a man running down Francis Street.

Williams testified that he was talking to Weddington outside on the sidewalk in front of the club when he was shot in the stomach. Williams did not see who shot him, but

stated that the gunshots came from the field across the street from the club and he saw the flashes from the muzzles of two guns. Williams testified that he watched Weddington suffer the fatal shot to her chest while she was standing right next to him with her back toward the field.

Parker testified that patrons were exiting the club when he arrived at the scene and that he had walked to the middle of 12th Street when the shooting began. Although he ducked behind a car, he was shot in the stomach and hip. Parker testified that he saw more than one shooter, but could not identify them.

Roy Miller, a River Rouge police officer, estimated that 40 gunshots were fired. Dean Molner, a Detective Sergeant with the Michigan State Police Department and a firearms and tool marks expert, identified four different groups of casings found, and concluded that there was a possible maximum of four guns used to fire the bullets, but it was also possible that less than four weapons were used. Bullet fragments were recovered in front of The Place and in a car parked in front of the club, and bullet holes were observed in three vacant homes down the street.

*People v. Davis, Jr.,* No. 316645, 2014 WL 4495219, *1-2 (Mich. Ct. App. Sept. 11, 2014).

Petitioner's convictions were affirmed on appeal. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Davis*, 497 Mich. 984 (2015).

Petitioner now seeks a writ of habeas corpus on these grounds:

I.   The trial court violated the defendant's due process rights to a fair trial and abused its discretion by its

consistent rulings as it regarded the admission of photographs into evidence, which collectively were so unfairly gruesome and damaging that the admission was more prejudicial than probative.

II. The evidence presented by the prosecutor was insufficient to establish beyond a reasonable doubt that the defendant was guilty of the crimes for which he was charged and convicted.

(Dkt. 1 at 3).

## II.  Legal Standard

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established

federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v.*

*Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 565 U.S. 520, 525 (2012).

"If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Although § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's

precedents. *Id.* Indeed, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.*; *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Admission of Photographs

Petitioner contends that the trial court violated his due process right to a fair trial when it admitted autopsy photographs of the victim and photographs depicting a poster and other items memorializing the victim which had been placed outside the club where the shooting occurred. He argues that the admission of these photographs was unfairly prejudicial.

First, Petitioner challenges the admission of photographs of the scene of the shooting that also depicted a memorial to the victim including a memorial poster, balloons, flowers, and a memorial candle. The trial court excluded three photographs and admitted five. (Dkt. 5-10 at 98). The trial court found admissible one close-up photo of a memorial poster and four photographs of the outside of the building from several angles, which also depicted other memorial items such as balloons and flowers. (*Id.*) The trial court admitted the memorial poster photograph to allow police to testify that the poster, which contained handwritten notes from mourners, was used as an investigative tool to obtain names of possible suspects and witnesses. (*Id.* at 97-98). With

respect to the other admitted photographs, the trial court held that they were not unfairly prejudicial. (*Id*.). On direct review, the Michigan Court of Appeals found no error in the trial court's admission of photographs of the building which also depicted items memorializing the victim. *Davis, Jr.,* 2014 WL 4495219 at *5. The state court reasoned that the photographs were relevant to important issues at trial: the lighting outside the building, the location of the fence and sidewalk in relation to the field across the street, and the relative vantage points of the witnesses. *Id.* Thus, the Michigan Court of Appeals concluded the photographs were admitted for a proper purpose: "to prove where the victims and shooters were located and the lighting conditions at the time of the shooting." *Id.*

The Michigan Court of Appeals held that the single photograph depicting a memorial poster commemorating and mourning the victim should have been excluded. The court explained in relevant part:

> Over defendants' objections, the trial court allowed the admission of a photograph of a poster tied to the fence in front of the club that depicted signatures and messages from acquaintances of Weddington. At trial, the police officer who took the photograph testified that this specific picture was taken to identify any possible people that may need to be interviewed for the purpose of identifying the shooters. Although the poster was relevant to show the investigative

tools the police may have used to find witnesses, and the prosecution emphasized that the police had a difficult time getting witnesses to cooperate, relying on Crime Stoppers and anonymous tips to track down defendants, any probative value of this photograph was minimal compared to the prejudicial effect of showing a poster that depicts messages from friends and family of the murder victim. The admission of this photograph was not substantially necessary or instructive to show material facts or conditions, such as the lighting conditions or the location where witnesses or perpetrators were situated at the time of the incident. Therefore, the trial court erred in allowing the admission of the close-up photograph of the poster memorializing Weddington.

*Id.*

The Michigan Court of Appeals nevertheless held that admission of this photograph was harmless error given the overwhelming evidence that Petitioner was one of the shooters. *Id.*

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. As a result, "errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citation

omitted). To form a basis for habeas corpus relief, a challenged evidentiary ruling must be so "fundamentally unfair" as to violate due process. *Id.* at 519-20. The Supreme Court has defined "the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Infractions that violate fundamental fairness are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Bey*, 500 F.3d at 521 (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts a violation of the Michigan Rules of Evidence or other state law, he fails to state a claim upon which relief may be granted. *See Estelle*, 502 U.S. at 68. Second, Petitioner fails to establish that the admission of the disputed photographs violated his due process rights and denied him a fair trial. With respect to the photographs that were properly admitted under state law, admission of these photographs did not affect the fundamental fairness of the trial or deny Petitioner due process. They

were relevant to the scene of the murder and the relative positions of the witnesses.

Second, while the Michigan Court of Appeals held that the memorial poster photograph was improperly admitted under state law, any error was harmless. On habeas review, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases).

The photograph of the memorial poster (and other items) may have elicited some sympathy for the victim, but none of these items pointed a finger of suspicion at Petitioner. The prosecutor did not use these items to argue that Petitioner should be convicted based upon the jury's sympathy for the victim. Substantial evidence supported Petitioner's convictions. One witness, Raphael Reed, identified Petitioner and his co-defendant as the shooters. Several witnesses testified that Petitioner and his co-defendant argued with other patrons and were escorted from the bar by security. In light of the evidence

against Petitioner, the Michigan Court of Appeals' decision that Petitioner was not harmed by the error was reasonable.

Petitioner fails to establish that the admission of the photographs violated due process or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner also claims that the trial court erred in admitting autopsy photographs of the victim. Petitioner argues that the medical examiner Dr. Allecia Wilson's testimony and the body diagram used during her testimony, taken together, were sufficient to explain and demonstrate to the jury the location and nature of the victim's injuries. The autopsy photographs, Petitioner argues, were unnecessary and unfairly prejudicial. The Michigan Court of Appeals held that the admission of these photographs was proper under Michigan Rules of Evidence because the photographs were relevant and not unfairly prejudicial. *People v. Davis*, 2014 WL 4495219 at *6.

The Sixth Circuit has held that the introduction of graphic photographs of a victim in a murder case does not offend the Constitution when there is some legitimate evidentiary purpose for the photographs' admission. *See, e.g., Biros v. Bagley*, 422 F.3d 379, 391

(6th Cir. 2005) (upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative").

Here, the photographs were relevant to illustrate the medical examiner's testimony regarding her autopsy of the victim. The medical examiner used the photographs to illustrate the nature of Petitioner's injuries and the path of the bullets. The photographs were less inflammatory than those in *Biros,* and related to the circumstances surrounding the shooting. *Biros*, 422 F.3d at 391. Petitioner has not established a due process violation arising from admission of the photographs.

## B.    Sufficiency of the Evidence

Petitioner argues that there was insufficient evidence to support any of his convictions. He bases his argument on the credibility of

prosecution witness Raphael Reed, the only eyewitness to identify Petitioner as one of the shooters. He argues that Reed's testimony was not credible.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony

and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson,* 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, to establish the crime of second-degree murder, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) committed with malice, and (4) without justification or excuse. *People v. Smith*, 478 Mich. 64, 70 (2007). "Malice" is defined as "the intent to kill, the intent to cause great bodily harm, or the intent

to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich. 442, 464 (1998). Malice may be inferred from the use of a weapon, from circumstantial evidence, or from evidence that the defendant intentionally set into motion a force likely to cause either death or great bodily harm. *People v. Roper*, 286 Mich. App. 77, 84-86 (2009). The elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 422 Mich. 554 (Mich. 1985). The intent to kill may be proven by inference from circumstantial evidence. *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). A person is guilty of discharging a firearm at an occupied building if the individual "discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or an occupied structure." Mich. Comp. Laws § 750.234b. Finally, the elements of felony-firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Avant*, 235 Mich. App. 499, 505 (2003).

The Michigan Court of Appeals rejected Petitioner's claim on the

merits finding that Reed's testimony was sufficient to support a jury's finding that Petitioner was one of the shooters. *Davis, Jr.,* 2014 WL at *3. The state court noted that Reed knew Petitioner before the shooting and observed the shooting from a close distance. *Id.* The state court declined to interfere with the trier-of-fact's determination. *Id.*

The Michigan Court of Appeals' conclusion is supported by the record. Petitioner challenges Reed's credibility. But the Court does not have the benefit of observing Reed's demeanor or voice inflections. The jury did have that benefit and obviously chose to credit Reed's identification testimony. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Instead, faced with contradictory testimony, the Court "'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), (quoting *Jackson*, 443 U.S. at 326). Reed's testimony, if credited, supported the jury's finding

that Petitioner was the shooter. Habeas relief is denied on this claim.

## IV. Conclusion

For the reason set forth above, the Court will deny the petition for a writ of habeas corpus.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability.

The Court further concludes that Petitioner will not be granted leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V. Order

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. (Dkt. 1.)

The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: November 28, 2017       s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 28, 2017.

                                     s/Shawna Burns
                                     SHAWNA BURNS
                                     Case Manager